IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EARL BOND,                        )
                                  )
            Plaintiff,            )
                                  )
     v.                           )          1:19CV901
                                  )
ANDREW M. SAUL,                   )
Commissioner of Social            )
Security,                         )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Earl Bond, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Brief); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of June 19, 2014. (Tr. 199-200.) Upon denial of that application initially (Tr. 79-92, 113-16) and on reconsideration (Tr. 93-112,

118-20), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 123-24). Plaintiff (represented by counsel), his wife, and a vocational expert ("VE") testified at the hearing. (Tr. 52-78.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 31-46.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 18-25, 195-98, 321-26), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2016.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of June 19, 2014 through his date last insured of September 30, 2016.

3. Through the date last insured, [Plaintiff] had the following severe impairments: history of degenerative disc disease and degenerative joint disease, status post surgery; chronic obstructive pulmonary disease; affective disorders depression and bipolar disorder; and anxiety.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform (lift or carry 50 pounds occasionally and 25 pounds frequently, stand or walk for six hours out of an eight-hour workday

2

and sit for six hours out of an eight-hour workday) . . . except he could occasionally climb stairs and ramps but never ladders, ropes, or scaffolds. He could occasionally kneel, crouch, and crawl. Overhead reaching would be limited to occasional. Handling is limited to frequent, not constant. He should avoid concentrated exposure to extreme cold, pulmonary irritants, unprotected heights, excessive vibrations, and hazardous machinery. [Plaintiff] would be limited to unskilled work only that requires no more than occasional contact with the public and with co-workers.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from June 19, 2014, the alleged onset date, through September 30, 2016, the date last insured.

(Tr. 36-46 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given

3

those limitations, the Court should remand this case for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at

4

176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')]

_____

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Case 1:19-cv-00901-WO-LPA   Document 16   Filed 08/11/20   Page 5 of 22

has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ credited opinion evidence that [Plaintiff] requires a low-stress work environment, but [the] RFC doesn't account for this limitation or explain why it was omitted" (Docket Entry 12 at 10 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 15 at 1-5);[5] and

2) "[t]he ALJ misstated the opinion findings [of consultative psychological examiner Johnny L. Kirby, Jr., M.A., C.A.S. ('CPE Kirby')] in order to reject [them]" (Docket Entry 12 at 18 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 15 at 5-8).[6]

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[5] Pin citations to page numbers refer to the page numbers placed in the footer of the document by the CM/ECF system.

[6] Supervising psychologist Dr. Andrea N. Sinclair also signed CPE Kirby's report (<u>see</u> Tr. 412), but because the ALJ and the parties here refer solely to CPE Kirby in discussing the report, this Recommendation will do the same.

8

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (<u>See</u> Docket Entry 14 at 14-25.)

## 1. Low-Stress Environment

In Plaintiff's first issue on review, he argues that "[t]he ALJ credited opinion evidence that [Plaintiff] requires a low-stress work environment, but [the] RFC doesn't account for this limitation or explain why it was omitted." (Docket Entry 12 at 10 (bold font and single-spacing omitted).) In particular, Plaintiff points out that the "[t]he ALJ gave significant weight to the opinions of the [state a]gency psychological consultants who found that [Plaintiff] required a low[-]stress work environment (<u>id.</u> at 12 (citing Tr. 44)), deemed the consultants' low-stress limitation "'consistent with the evidence'" (<u>id.</u> at 13 (quoting Tr. 44)), and indicated that the consultants' low-stress limitation "was reflected in [the] RFC" (<u>id.</u> at 14 (citing Tr. 44)). According to Plaintiff, the "consultants provided some guidance regarding what they meant by 'low-stress'" (<u>id.</u> at 15), including, <u>inter alia</u>, limitations to a "non-production pace," "reduced social demands," and "a stable work assignment" (<u>id.</u> (citing Tr. 102, 108)), "[b]ut the ALJ did not address these limitations head-on or explain why he did not credit them" (<u>id.</u> at 16). Plaintiff argues that "the ALJ's error is not harmless" (<u>id.</u> at 17), "[b]ecause the jobs [cited by the VE and adopted by the ALJ at step five of the SEP] all include some level [of] production pace (<u>id.</u> (citing Tr. 45, <u>Dictionary of</u>

9

Occupational Titles ("DOT"), No. 616.685-058 ("Riveting-Machine Operator"), 1991 WL 685094 (G.P.O. 4th ed. rev. 1991), DOT, No. 726.687-026 ("Lamination Assembler, Printed Circuit Boards"), 1991 WL 679636, DOT, No. 222.587-046 ("Stacker"), 1991 WL 672125, and referencing Tr. 72-73)). Plaintiff's contentions have merit and warrant remand.

The applicable regulations make clear that, although, as a general matter, opinions from an examining source deserve more weight than those from a non-examining source, see 20 C.F.R. § 404.1527(c)(1), non-examining state agency consultants constitute "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation[,]" 20 C.F.R. § 404.1527(e)(2)(I). Indeed, ALJs can permissibly credit the opinions of non-examining state agency consultants, who typically render their opinions without the benefit of a full record, over those of examining sources, to the extent the non-examining sources' opinions remain consistent with the evidence received subsequent to their opinions. See Lapeer v. Astrue, No. 5:08-CV-256-D(1), 2009 WL 2487038, at *7 (E.D.N.C. Aug. 13, 2009) (unpublished).

Here, the state agency psychological consultant at the initial level of review found that Plaintiff "would need a low[-]stress environment" (Tr. 89), and the consultant upon reconsideration opined that Plaintiff could "perform simple[,] routine and

10

repetitive tasks (SRRTs) at [a] non-production pace in a low[-]stress position with reduced social demands" (Tr. 102 (emphasis added)). That consultant elaborated further that Plaintiff remained able to "sustain sufficient attention to complete simple[,] routine tasks for a 2[-]hour period at a non-rapid to semi-rapid pace" (Tr. 107 (emphasis added)), that Plaintiff could interact with others "in a workplace setting with minimal social demands" (Tr. 108 (emphasis added)), and that Plaintiff could "function adequately in a stable work assignment performing simple tasks in a low-stress position that is not highly production oriented or socially demanding" (id. (emphasis added)). In turn, the ALJ assessed and weighed the consultants' opinions as follows:

> As for the psychological consultants, they opined [Plaintiff] could sustain concentration for and complete simple tasks and could relate to others appropriately. They also opined [Plaintiff] should work in a low[-]stress environment. These limitations are consistent with the evidence, generally, and are reflected in the [ RFC]. I also give them significant weight.

(Tr. 44 (emphasis added).)

Despite the ALJ's assignment of "significant weight" to the consultants' low-stress limitation and his representation that the RFC "reflect[s]" that limitation (id.), the ALJ's decision fails to explain how the RFC's limitation to "unskilled work only that requires no more than occasional contact with the public and with co-workers" (Tr. 39) accounts for the consultants' low-stress limitation (and particularly the further elaboration of that

11

limitation by the reconsideration-level consultant involving restrictions on pace and job assignment stability (see Tr. 102, 107, 108)).[7] That failure prevents the Court from meaningful judicial review of the path of the ALJ's reasoning.

In response, the Commissioner first argues that "the ALJ was not constrained to include a limitation to only 'low-stress' work, despite affording the state agency psychologists' opinions 'significant' weight[,] . . . because even when an ALJ grants significant weight to an opinion overall, he is not required to incorporate every limitation from that source in the RFC." (Docket Entry 14 at 17 (citing, inter alia, Bacnik v. Colvin, No. 1:12CV801, 2014 WL 3547387, at *4 n.7 (M.D.N.C. July 17, 2014) (unpublished) (Eagles, J.)).) The Commissioner's argument, however, glosses over the fact that, when an ALJ does not include certain limitations in the RFC from a source given significant weight, the reviewing court must remain able to ascertain from the ALJ's decision why the ALJ omitted those limitations. See, e.g., Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) ("We have held

---

[7] Although not argued by Plaintiff (see Docket Entries 12, 15), the ALJ's limitation to "unskilled work only" (Tr. 39) does not, on its face, account for the reconsideration-level consultant's limitation of Plaintiff to SRRTs (see Tr. 102). See Bennett v. Colvin, No. 4:12CV152, 2013 WL 4417605, at *4 (E.D.N.C. Aug. 15, 2013) (unpublished) (holding that "SRRTs are a narrower subset than the full range of unskilled work"); see also McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525, at *7 (M.D.N.C. Jan. 4, 2012) (unpublished) (Sharp, M.J.) (same), recommendation adopted, 2012 WL 1414327 (M.D.N.C. Apr. 24, 2012) (unpublished) (Beaty, Jr., J.).

that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and _why_ . . . .'" (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013))). For example, in Bacnik, the Court found that the ALJ's decision explained _why_ the ALJ had not adopted the social restrictions opined by the reconsideration-level state agency psychological consultant. See Bacnik, 2014 WL 3547387, at *4. In that regard, the Court noted that, "immediately after pointing out that the opinions of [the state agency psychological consultants] limited [the plaintiff] to [SRRTs], the ALJ also explicitly cited and gave great weight to the conclusion of [a consultative psychological examiner] that [the plaintiff] would not have trouble getting along with others from an anger management perspective." Id. (internal quotation marks omitted).[8] The ALJ's decision here lacks _any_ explanation for the omission of restrictions on pace and job assignment stability from the RFC.

Next, the Commissioner contends that "the ALJ did, in fact, incorporate _many_ of the limitations contemplated within the meaning of the word [low-stress]" in the RFC. (Docket Entry 14 at 18

_____

[8] Bacnik also differs from the instant case because, in Bacnik, only one of the state agency psychological consultants found the plaintiff's mental condition necessitated social restrictions. See Bacnik, 2014 WL 3547387, at *4. In contrast, here, both consultants believed Plaintiff required a low-stress work environment (see Tr. 89, 108), with the reconsideration-level consultant, as discussed above, providing further elaboration on the meaning of "low-stress" (see Tr. 102, 107, 108).

13

(emphasis added).) More specifically, the Commissioner asserts that "the ALJ accounted for 'low-stress' . . . by restricting Plaintiff to only occasional interaction with the public and coworkers." (Id. (citing Tr. 39, 108).) As an initial matter, even assuming arguendo that the ALJ's limitation to occasional interaction with the public and coworkers sufficiently captured the reconsideration-level consultant's definition of low-stress work as not "socially demanding" (Tr. 108), the Commissioner has shown only that the ALJ accommodated one part of that consultant's definition of low-stress and makes no argument that the interaction restriction somehow accounts for the consultant's restrictions on pace and/or job assignment stability (see Docket Entry 14). Furthermore, the ALJ did not place any restriction on Plaintiff's interaction with supervisors (see Tr. 39), which calls into question whether the interaction restriction in the RFC sufficiently accounts for the consultant's limitation to jobs that do not qualify as "socially demanding" (Tr. 108).

The Commissioner further maintains that "the jobs provided by the VE [and adopted by the ALJ at step five] fit th[e] description [of 'not highly production oriented']." (Docket Entry 14 at 18 (quoting Tr. 108).) According to the Commissioner, "[t]he definitions [of the jobs in the DOT] do not indicate that the individual is required to perform the jobs at any particular pace or production level" and "fail to support that these jobs are

14

'*highly* production oriented' – a different definition from simply having any level of pace." (Id. at 18-19 (citing DOT, No. 616.685-058, 1991 WL 685094, DOT, No. 726.687-026, 1991 WL 679636, DOT, No. 222.587-046, 1991 WL 672125, and quoting Tr. 108 (emphasis supplied by Commissioner)).) The Commissioner's position overlooks the fact that the reconsideration-level consultant provided three different expressions of his non-production limitation (see Tr. 102, 107, 108). Although the jobs in question might fit within the "not highly production oriented" limitation (Tr. 108), an open question remains whether those jobs conform with limitations to "a non-production pace" (Tr. 102) or "a non-rapid or semi-rapid pace" (Tr. 107). Furthermore, despite the DOT job descriptions' omission of express reference to production requirements or conveyor belts, see DOT, No. 616.685-058, 1991 WL 685094, DOT, No. 726.687-026, 1991 WL 679636, DOT, No. 222.587-046, 1991 WL 672125, all three jobs certainly involve assembly work in a manufacturing environment which, as recognized by Plaintiff, "other jobs/workers would be reliant upon being done in a timely fashion" (see Docket Entry 15 at 4). Ultimately, the ALJ in conjunction with the VE (and not the Court) must determine whether the three jobs accommodate limitations to a non-production pace, a non-rapid or semi-rapid pace, or not highly production oriented work.

The Commissioner additionally posits that "the ALJ also afforded 'significant' weight to the opinion of Dr. [Carla]

Duszlak" (Docket Entry 14 at 19 (citing Tr. 43, 395)), who "specifically opined that Plaintiff '*would likely be able at this point to deal with the stress of a full-time job in his current condition*'" (id. (quoting Tr. 395) (italics supplied by Commissioner) (underscoring added)).[9]  That observation does not obviate the need for remand.  As an initial matter, Dr. Duszlak did not opine that Plaintiff could handle the stress of any full-time job.  (See Tr. 395.)  Further, as Plaintiff points out (see Docket Entry 15 at 2-3), the ALJ assigned all three of the opinions in question the exact same weight - "significant weight" (Tr. 43, 44) - and thus, to the extent Dr. Duszlak's opinion, which lacks any specific limitation on Plaintiff's ability to deal with workplace stress, conflicts with both of the state agency psychological consultants' opinions, which include such stress-related limitations (compare Tr. 395, with Tr. 89, 102, 107, 108), that unresolved conflict underscores the conclusion that the ALJ did not sufficiently explain the restrictions adopted in and/or omitted from the RFC.

Lastly, the Commissioner proffers the ALJ's "analysis of the medical evidence" as supplying the necessary explanation for the

---

[9] Although the ALJ discussed Dr. Duszlak's report in a fair amount of detail, the ALJ did not specifically mention or assign weight to Dr. Duszlak's opinion that Plaintiff "would likely be able at this point to deal with the stress of a full-time job in his current condition" (Tr. 395).  (See Tr. 43.)

omission of restrictions regarding pace and job assignment stability in the RFC. (Docket Entry 14 at 19.) In particular, the Commissioner points out that "the ALJ explained that the record failed to support disabling symptoms or impairments" and "that Plaintiff demonstrated mental stability, and self-reported improvement with treatment." (Id. at 20 (citing Tr. 43).) The Commissioner's argument might have more probative force had the ALJ simply afforded the state agency psychological consultants' opinions as a whole "significant weight" as consistent with the record. The ALJ here, however, expressly identified the consultants' opinions that Plaintiff required a low-stress work environment, found that limitation "consistent with the evidence," afforded it "significant weight," and indicated that the RFC "reflected" the low-stress limitation. (Tr 44.) The ALJ's generalized discussion and analysis of the mental evidence of record does not resolve or explain the disconnect between the above-described statements and the lack of limitations on pace and job assignment stability in the RFC.

In sum, the ALJ reversibly erred in his evaluation of the state agency psychological consultants' opinions, requiring remand.

## 2. CPE Kirby's Opinions

In Plaintiff's second and final assignment of error, he alleges that "the ALJ misstated the opinion findings [of CPE Kirby] in order to reject [them]." (Docket Entry 12 at 18 (bold font and

17

single-spacing omitted); see also Docket Entry 15 at 5-8.) More specifically, Plaintiff notes that CPE Kirby opined that Plaintiff would "experience difficulty in understanding, retaining, and following instructions and in tolerating the stress and pressures associated with day-to-day work activity, as well as lesser problems in relating to others, including fellow workers and supervisors" (id. at 20 (citing Tr. 411)), and that Plaintiff "would experience difficulty in managing benefits" (id. (citing Tr. 411-12)). Plaintiff notes that the ALJ assigned little weight to CPE Kirby's opinion that Plaintiff "would have difficulty managing his finances or managing benefits in his own best interests," but then further discounted CPE Kirby's opinions because he did not "provide a function-by-function assessment of [Plaintiff]'s capacity or indicate in any way what other limitations [Plaintiff] would face because of his mental impairments." (Id. at 21 (citing Tr. 42).) According to Plaintiff, the ALJ's failure to acknowledge or weigh CPE Kirby's above-described opinions regarding Plaintiff's ability to handle instructions, work-related stress, and social interaction constitutes prejudicial error, because "the limitations assessed by [CPE] Kirby would impact the [medium, unskilled] occupational base." (Id.)

In response, the Commissioner defends the ALJ's evaluation of CPE Kirby's opinions on three grounds. First, the Commissioner argues that "[t]he ALJ appropriately discounted [CPE Kirby's]

18

opinion in light of its lack of support, given that [CPE] Kirby did not explain the limitations in a function-by-function assessment." (Docket Entry 14 at 23 (citing Tr. 42, as well as 20 C.F.R. § 404.1527(c)(3)).) Second, the Commissioner contends that CPE Kirby, in fact, "did not provide a function-by-function assessment," because he, "in only vague terms, noted that Plaintiff would have 'some' difficulties with instructions and in tolerating stress, and that he had "somewhat lesser' difficulties in relating to others." (Id. at 24 (citing Tr. 411).) Third, the Commissioner points out that CPE Kirby "never stated that Plaintiff was incapable of understanding, retaining, or following instructions; tolerating work[]stress; or relating to others," but "[r]ather [] indicated 'some' – but not disabling – levels of difficulty." (Id. (quoting Tr. 411).) According to the Commissioner, CPE Kirby's above-described opinions remain "entirely consistent with the ALJ's determination that Plaintiff could perform unskilled work requiring no more than occasional contact with the public or coworkers" (id. (citing Tr. 39) (footnote omitted)), and that "[r]emand is therefore not warranted on this basis" (id. at 25 (citing Shinseki v. Sanders, 556 U.S. 396, 407 (2009))).

In reply, Plaintiff counters the Commissioner's arguments by noting that "the ALJ did not reject [CPE] Kirby's opinion because of a lack of support, but because . . . he did not make a function-by-function assessment" (Docket Entry 15 at 6 (citing Tr. 42)), and

19

that "[t]his Court cannot affirm based on *post hoc* rationales that might have supported the ALJ's conclusion" (id. at 6-7 (citing Watkins v. Commissioner of Soc. Sec., 457 F. App'x 868, 872 (11th Cir. 2012))). Plaintiff further points out that CPE Kirby's opinions harmonize "with the opinions of the [state a]gency psychologists that [Plaintiff] requires a low[-]stress work setting." (Id. at 7-8 (citing Tr. 79-91, 93-110).)

In this case, the ALJ erred in his analysis of CPE Kirby's opinions. The ALJ's analysis contained the following rationale:

> As for functional capacity, [CPE] Kirby opined [Plaintiff] had below-average cognitive functioning that would translate to difficulties with money management and dependency on others to manage his finances. [CPE] Kirby also opined [Plaintiff] would have difficulty managing benefits in his own best interests. Otherwise, [CPE] Kirby did not provide a function-by-function assessment of [Plaintiff]'s capacity or indicate in any way what other limitations [Plaintiff] would face because of his mental impairments. Thus, the opinion offers little assistance in developing a[n RFC] for [Plaintiff] and is, therefore, given little weight.

(Tr. 42 (emphasis added).) As the above-emphasized language makes clear, the ALJ did not discount CPE Kirby's opinions because they lacked support, as argued by the Commissioner (see Docket Entry 14 at 23), but because, in the ALJ's assessment, they did not contain any mental functional limitations (see Tr. 42). Moreover, because the ALJ did not mention (and indeed denied the existence of) CPE Kirby's opinions regarding Plaintiff's ability to handle instructions, work-related stress, and social interaction, the ALJ

20

did not discount them on grounds of vagueness, as urged by the Commissioner (see Docket Entry 14 at 24). Furthermore, as Plaintiff argued (see Docket Entry 15 at 6-7), the Court cannot consider post-hoc rationalizations, see Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, C.J.) (citing Securities & Exch. Comm'n v. Chenery Corp, 332 U.S. 194, 196 (1947)).

Both parties advance arguments directed at prejudice (or the lack thereof) from the ALJ's error in evaluating CPE Kirby's opinions. Plaintiff argues that the ALJ's failure to acknowledge or weigh CPE Kirby's opinions regarding Plaintiff's ability to handle instructions, work-related stress, and social interaction constitutes prejudicial error, because "the limitations assessed by [CPE] Kirby would impact the [medium, unskilled] occupational base." (Docket Entry 12 at 21.) In response, the Commissioner urges that CPE Kirby's above-described opinions remain "entirely consistent with the ALJ's determination that Plaintiff could perform unskilled work requiring no more than occasional contact with the public or coworkers" (Docket Entry 14 at 24 (citing Tr. 39) (footnote omitted)), and that "[r]emand is therefore not warranted on this basis" (id. at 25 (citing Shinseki, 556 U.S. at 407)). The Court need not determine whether the ALJ's error in analyzing CPE Kirby's opinions amounts to prejudicial error in light of the need for remand based on the ALJ's prejudicial error

21

in failing to account for the state agency psychological consultants' stress-related restrictions in the RFC. Upon remand, the ALJ must re-evaluate the state agency psychological consultants' opinions, as well as CPE Kirby's opinions, and should rely upon a vocational resource to determine the impact of any mental restrictions in the RFC on the available jobs in the national economy.

### III. CONCLUSION

Plaintiff has established grounds for remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this recommendation. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied and Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing (Docket Entry 11) should be granted.

 /s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 11, 2020